OGDEN *v.* TRANSCONTINENTAL AIRPORT OF TOLEDO, INC.

(Decided February 2, 1931.)

*Messrs. Kirkbride, Boesel, Frease & Cole, Messrs. Burch, Peters, Geismar & DeFosset* and *Mr. Arthur H. Ewald,* for plaintiff in error.

*Messrs. Tracy, Chapman & Welles,* for defendant in error.

RICHARDS, J. This action was commenced by Clarence E. Ogden for the purpose of recovering $9,200, the value of an airplane which he claimed to have stored with the defendant as a bailment, and which was never returned to him. The trial resulted in a verdict and judgment in favor of the defendant.

While the facts and the law in this case are not complicated, the case has some novel aspects in that it involves the destruction of an airplane, resulting in the loss of the life of the pilot, who, if living, would be a material witness, and the subsequent death, by accident, of another pilot, who also, if living, would have been a material witness.

The facts, so far as necessary to understand the issues, are as follows:

The plane involved in this action was an International Aircraft plane, equipped with a Wright Whirlwind motor, owned by the plaintiff, and had been driven for him by Harold A. Speer, an experienced operator, from Cincinnati to Jackson, Michigan, on business. His return flight on January

13, 1929, was by way of Toledo. The weather was very cold, evidently below zero, and as he approached Toledo he discovered that the oil in the pipes was congealing and that it was not safe to continue his flight. He therefore landed at the Toledo airport of the defendant company about noon on January 13th, and his plane was taken inside the hangar with the assistance of Ted Hay, who was about the hangar. In an attempt to remedy the difficulty, they wrapped felt about the pipes and oil tank. Hay sold Speer fifteen gallons of gasoline and four gallons of oil for the plane and rendered him a bill therefor on the printed blank of the defendant company, showing that Speer was indebted to the company for the amount of the bill, which was signed The Transcontinental Airport of Toledo by T. W. Hay. Later in the day Speer undertook to continue his journey to Cincinnati, but after proceeding some fifteen miles he had the same difficulty with congealing oil and returned to the airport of the defendant. He inquired of Mr. Van Buren, now deceased, and who appears to have been assistant manager of the airport, regarding the storage rate for a plane, and was told that it would be $1.50 per night. Speer stayed in Toledo overnight and discovered on the following morning that the unfavorable weather conditions still continued. He stated that he had to be in Cincinnati on Tuesday to attend a directors' meeting, and was informed that on Wednesday morning 40,000 pounds of mail was to be transported from the airport for the Willys-Overland Company, by airplane, and that many planes would be at the airport that morning.

Speer testified that he told assistant manager Van

Buren that he would leave the ship there and catch a train, that he had talked to Mr. Hay, who had agreed to fly the ship to Cincinnati for him Thursday, provided he, Speer, could not return, and that he instructed Van Buren that he would call him on the phone Wednesday night as to whether he would have Hay fly the plane to Cincinnati, if he himself could not get back. Speer further testified that he explained to Van Buren that it was necessary that he, Speer, "get permission from Mr. Ogden." The plane was accordingly left in the hangar of the defendant and Speer returned to Cincinnati on Monday, the 14th. Speer did not communicate with Ogden, who was in California, and did not phone Van Buren, or anybody else representing the defendant.

The plane was totally destroyed Wednesday morning, January 16th, the evidence tending to show that the destruction occurred under the following circumstances: There was a low-lying, heavy fog that morning, and airplanes arriving at the time the large shipment of mail was to be made appeared to have difficulty in finding the airport on account of the fog. Gabriel C. Harman, who was, in January, 1929, manager of the airport for the defendant, testified as follows:

"Mr. Hay volunteered to assist these pilots looking for the field, in locating the field, by going up and piloting them into the field, which, of course, he was much better acquainted with than any of the others. He came out into the hangar and asked me to assist him in starting the plane, which I did. In starting the motor of the plane. He opened the doors of the hangar, rolled the ship out with our own hands, but

not with the power of the plane, put jacks under the wheels, and Mr. Hay got in the pilot's seat and I started the motor for him. After two or three minutes, when the ship had received its—the oil had become properly warmed, and the ship's motor was functioning properly, someone came up to us and said that the planes had found the field, and that it would not be necessary for him to go up on this mission. I made a special effort to go to Mr. Hay, who was seated in the ship, and he did not hear these reports, by reason of the noise of the motor, to advise him that it would not be necessary to make this flight. He said that, in view of the fact, that he was planning to return the ship to Cincinnati some time that week, and that there had been oil line trouble encountered by Mr. Speer in coming to the field, that he thought this would be a good time to test out the motor to see if it were functioning properly before he took off to return the ship to Cincinnati. Realizing that he had had conversation with Mr. Speer, who was the pilot of the plane, I offered no objection to him taking off in the plane, because the weather then was clearing sufficiently to enable flying operations off the field, which had been prohibited by weather, prior to that time.''

Hay accordingly flew the plane, and within a few minutes it appears to have taken a nose dive on the field and was totally destroyed, and Mr. Hay instantly killed.

The answer, in addition to a general denial, sets out two defenses, one being that the transaction was not a bailment, and the other that the plane was demolished without any fault or negligence on the part of the defendant.

This court is of the opinion that the undisputed evidence shows, as a matter of law, that the transaction constituted a bailment of the plane to the defendant. Harman, who was manager of the airport for the defendant, testified that the plane was in the hangar in his charge, and the defendant seems to have moved the plane about in the hangar as occasion required. The circumstances disclose the same relation as is constantly created when automobiles are stored in a garage overnight for a compensation. Being a bailee, the defendant owed to the plaintiff the ordinary duty cast on a bailee which is as stated in 5 Ohio Jurisprudence, 108, Section 19, to exercise ordinary care and diligence in protecting and keeping safely the thing bailed.

The defendant being, under the undisputed evidence, a bailee as a matter of law, the trial court erred to the prejudice of the plaintiff in the general charge in submitting that issue to the jury.

The other issue is the claim that the plane was destroyed without fault on the part of the defendant. This issue raises a question as to the authority of Speer and the agency of Hay. Speer testified that he made arrangements for the storage of the plane with Van Buren, assistant manager of the defendant, and informed Van Buren that he, Speer, must get authority from Ogden, the owner, before allowing anybody to fly the plane. If Speer made this statement to Van Buren, and if Van Buren was assistant manager, and directly or impliedly authorized on behalf of the defendant to represent it in this matter, then the statement which Speer made to Van Buren would be notice to the defendant of the limitation of authority possessed by Speer, and if the

defendant had knowledge of such limitation of authority there would be no justification for it to rely on the apparent authority, if any, which Speer would have by reason of being in possession of the plane. If the defendant had knowledge of this limitation, it had no right to allow anybody to fly the plane except the owner or Speer. Harman's own testimony might justify the inference that in permitting Hay to take the plane without objection he relied on the mere fact that he had seen him talking with Speer.

After a careful reading of the evidence, we are satisfied that the verdict and judgment for the defendant are manifestly against the weight of the evidence.

Some alleged errors arise on the admission of evidence, particularly relating to the logbooks kept by Ted Hay and by the defendant. These logbooks were admitted in evidence over the exception of the plaintiff. Speer in his testimony could not recall whether he had been at the airport before January 13th, or whether Hay had been up in the plane, and denied having a passenger when he landed January 13th. Hay's logbook showed that he had flown the plane on December 29, 1928. The record contained in the logbook not being in entire accordance with the testimony of Speer, it would not be prejudicial error to receive it in evidence as bearing upon his credibility and accuracy. Hay was an experienced, licensed operator of aircraft, and the regulations adopted by the Department of Commerce of the United States require every such operator to keep a navigation and engine logbook. This logbook appears to have been kept in accordance with the requirements of the regulations, and was therefore an

official record of the matters required to be recorded therein. We think courts may take judicial notice of the rules and regulations of federal executive departments. 23 Corpus Juris, 99; *Boone* v. *State,* 109 Ohio St., 1, 141 N. E., 841.

In this latter case the Supreme Court held that the courts of the state will take judicial notice of regulations made by the commissioner of prohibition and issued by the United States Treasury Department.

Generally speaking, it would be good practice and a convenience to the courts to read into the record or attach thereto anything of which a court is expected to take judicial notice.

In the case under consideration the trial court admitted these logbooks in evidence, and as everything will be presumed in favor of the regularity of the action of the court this court will assume that the trial court did in fact take judicial knowledge of the regulations of the Department of Commerce relating to logbooks. While these items of evidence do not appear to be of great importance on the issues involved in the case, we find no prejudicial error in receiving them in evidence.

We have not considered any objections to special instructions given to the jury, as no exceptions were lodged thereto.

For the reasons given the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

WILLIAMS and LLOYD, JJ., concur.