Turner, J.
 

 The fundamental question is whether a municipality may be held liable in a tort action on account of suffering a mailbox to be erected and maintained in one of its streets.' The liability, if any, must
 
 *613
 
 attach by virtue of Section 3714, General 'Code, which provides: “Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance. ’ ’ While the duties and obligations imposed by the foregoing statute are in derogation of the common law, and therefore to be strictly construed
 
 (City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518), yet the duty enjoined is ministerial and mandatory
 
 (City of Circleville
 
 v.
 
 Sohn,
 
 59 Ohio St., 285, 52 N. E., 788, 69 Am. St. Rep., 777). The scope and application of this statute have been generally limited to conditions affecting the actual physical structure of the way, and to physical obstructions or hindrances to
 
 traffic
 
 (28 Ohio Jurisprudence, 971).
 

 At the outset, it will be well to distinguish between use for travel or transportation on one hand, and private use on the other. The primary purpose of roads, which term includes streets and ways, is travel and/or transportation.
 

 Section 19 of Article I of the Constitution of Ohio requires that roads shall be kept open to the public without charge.
 

 In addition to the public use of roads, there have grown up private uses, such as the license to a magnetic telegraph company to construct and maintain fixtures, including poles, in any public road, so long as such fixtures do not incommode the public in the use of the road (Section 9170, General Code; Title 47, Section 1, IT. S. Code [Section 5263, U. S. Revised Statutes]).
 

 Notwithstanding such license, the right of the trav
 
 *614
 
 eling public to the use of a public road to the entire width of the right of way is- still paramount
 
 (Cambridge Home Telephone Co.
 
 v.
 
 Harrington,
 
 127 Ohio St., 1, 186 N. E., 611;
 
 Ohio Bell Telephone Co.
 
 v.
 
 Lung, Admx.,
 
 129 Ohio St., 505, 196 N. E., 371;
 
 Ganz et al., County Commrs.,
 
 v.
 
 Ohio Postal Telegraph Cable Co.,
 
 140 F., 692).
 

 But we are not dealing in this case with a private use of a road. The erection and maintenance of mailboxes upon a post road is a public use, being for both the delivery and receipt of mail. Therefore, we must discard all pole and other private-use cases and ascertain to what extent, if any, a municipality may control the erection and maintenance of mailboxes on a post road.
 

 Section 8 of Article I of the Constitution of the United States provides:
 

 “The Congress shall have power * * *
 

 “To establish post offices and post roads;
 
 * * *
 
 and
 

 “To make all laws which shall be necessary and proper for carrying into execution the foregoing powers * *
 

 In commenting upon the foregoing provision of the Constitution of the United States, the Attorney General of the United States, in an opinion to the Postmaster General under date of December 27,1916, Opinions of Attorney General, Volume 31, page 73, said (p. 77): “It is unnecessary to enumerate the many instances of legislative exercise of the power to establish post offices and post roads, and to enact necessary laws incident thereto, conferred) upon the federal Congress by Article I, Section 8, of the Constitution. Certainly at this late date no one will assert that the power did not cover the erection and control of street letter boxes.
 
 Ex parte Jackson,
 
 96 U. S., 727, 732;
 
 In re Rapier,
 
 143 U. S., 110, 134. As stated in the latter case:
 

 
 *615
 
 “ ‘ * * * When the power to establish post offices and post roads was surrendered to the Congress it was as a complete power, and the grant carried with it the right to exercise all the powers which made that power GÍÍGCtivG * * ^
 

 Under Title 39, Section 481, U. S. Code (Section 3964, U. S. Revised Statutes), all letter-carrier routes established in any city or town for the collection and delivery of mail matters are established post roads.
 

 Title 18, Section 321, U. S. Code (Federal Criminal Code), provides as follows: “Whoever shall willfully or maliciously injure, tear down, or destroy any letter box or other receptacle intended or used for the receipt or delivery of mail on any mail route, or shall break open the same, or shall willfully or maliciously injure, deface, or destroy any mail deposited therein, or shall willfully take or steal such mail from or out of such letter box or other receptacle; or shall willfully aid or assist in any of the aforementioned offenses, shall for every such offense be punished by a fine of not more than $1,000 or by imprisonment for not more than three years.”
 

 In the opinion of the Attorney General of the United States to the Postmaster General,
 
 supra,
 
 there was under discussion the right of the art commission of the city of New York to pass upon the design of mailboxes erected in the city. While the boxes there were for the receipt only of mail, we can see no difference in principle between such boxes and those for the delivery and collection of mail. At page 79, the Attorney General said: “It follows that the fundamental test is not, whether the attempted state exertion will affect the exercise of a federal function to an extent that will demonstrably impair or impede the exercise of such function ;*it need only appear that the state has thereby in any degree laid its regulative hand upon such function. * * *”
 

 
 *616
 
 In the Code of the Laws of the United States, Title 5 is entitled, “Executive Departments and Government Officers and Employees.” Section 1 states that the provisions of this title shall apply to the Post Office Department. Title 5, Section 22, U. S. Code, provides as follows: “Departmental Regulations. — The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. (R. S. Section 161.)”
 

 The following regulations promulgated by the Post Office Department are established in conformity with the above Section 22:
 

 Title 6, Chapter 3 of the Postal Laws and Regulations, Section 965, provides as follows: “All persons, except those who reside within the city delivery limits of cities where city delivery service is in operation, or within the village delivery limits of cities, towns or villages where village delivery service is in operation, may be served by rural carriers, provided they will erect approved boxes on the established line of the routes in the manner required by the department.”
 

 Section 1010 provides: “Ordinary mail shall be delivered only into boxes of patrons to whom it is addressed, or into those of persons duly authorized to receive it. * * * ”
 

 Section 1058, as in effect at the time of the accident, provided the type of mailbox which was required, and made it the duty of persons wishing to be served by rural delivery to provide and erect, at their own expense, standard boxes. This section read as follows: “Persons wishing to become patrons of rural routes shall provide and erect, at their own expense, standard boxes of the No. 2 size, the manufacture of which has been approved by the department.
 

 
 *617
 
 ‘ ‘ The standard box is 23 3/16 inches long, 11 inches wide, and 13 3/8 inches high.
 
 * * *”
 

 Section 1061 provides expressly where mailboxes shall be erected as follows: “Each box shall, if practicable, be erected on the right side of the road regularly traveled by a rural carrier and in such position as to be easily and safely accessible for the delivery and collection of mail by the carrier without leaving his conveyance. In those states in which it is contrary to law for persons to drive on the side of the highway that is to the left of the operator, all boxes shall be on the right-hand side of the roads in the direction of travel of the rural carriers.”
 

 Section 1064 required carriers to report insecure or
 
 badly-located boxes.
 
 This section provided: “Rural carriers shall make report to postmasters of any boxes erected which do not conform to the regulations in the matter of type, condition, location, or inscriptions, and to the owners of these boxes the postmaster shall send Form 4056 (notice to patron of irregularity in rural mailbox), requesting that the irregularities or defects be remedied. If, after a reasonable time, any patron fails to comply with the requirements, the postmaster shall make report thereof to the First Assistant Postmaster General, Division of Rural Mails, giving the name of the patron and a statement as to what is required in connection with the box. The same action shall be taken by postmasters in respect to boxes which they note in making the annual inspection required by Section 970 are not in conformity with the regulations. The form (4056) shall be obtained by requisition on the Division of Equipment and Supplies.”
 

 Among the rules adopted for the delivery of mail is the following, to be found in Postal Guide, page 42, paragraph 72, as follows: “Location of the boxes of rural patrons. It is a requirement of the department that the boxes maintained by patrons of rural routes
 
 *618
 
 shall be so placed that they may be conveniently served by the carriers without the need of leaving their conveyances, and that they shall be located on the right-hand side of the road in the direction of travel of the carriers in all cases where the traffic conditions are such that it would be dangerous for the carriers to drive to the left in order to reach the boxes, or their doing so would constitute a violation of the traffic laws and regulations. On new rural routes all boxes shall be located on the right-hand side of the road in the direction of travel of the carrier,
 

 “Rural carriers have no special rights or privileges in the use of the roads but are amenable to the traffic laws and regulations. The boxes must be placed to conform with the laws of the state or the regulations of the officials having supervision over the highways, and where they will be accessible to the carriers as required by the regulations of the department.
 

 “Postmasters shall give special attention to the location of rural mailboxes along hard-surfaced roads, or those on which the traffic is heavy, and for that reason driving to the left is objectionable. In event of the failure of hny patrons to change the location of their boxes when called upon to do so, where such change is necessary, full report of the facts shall be submitted to the Second Assistant Postmaster General, such reports to include the names of the patrons and the routes by which they are served. ’ ’
 

 In the course of the opinion in the case of
 
 London & Lancashire Indemnity Co. of America
 
 v.
 
 Bd. of Commrs. of Columbiana County,
 
 107 Ohio St., 51, 61, 140 N. E., 672, it was said:
 

 “All such acts of Congress, and the creation of boards pursuant thereto, and the promulgation and publication of executive orders and orders of such boards, and all other official acts of general public interest of the federal executive department, and the proclamation and order of the president taking pos
 
 *619
 
 session and assuming control of transportation systems for war purposes, will be judicially noticed by tbe courts, and notice and knowledge thereof will be charged to all persons affected thereby. These principles are so well settled that it is unnecessary to cite authorities to support them.”
 

 In the case of
 
 Boone
 
 v.
 
 State,
 
 109 Ohio St., 1, 141 N. E., 841, it was held, in paragraph 1 of the syllabus: “The state court will take judicial notice of regulations made by the Commissioner of Prohibition and issued by the United States Treasury Department.” See, also,
 
 State Board of Pharmacy
 
 v.
 
 Gafford,
 
 122 Ohio St., 580, 173 N. E., 192;
 
 Ogden
 
 v.
 
 Transcontinental Airport of Toledo, Inc.,
 
 39 Ohio App., 301, 177 N. E., 536; 30 Ohio Jurisprudence, 202; 17 Ohio Jurisprudence, 42, 45, 50 and 54; 23 Corpus Juris, 99; and
 
 Caha
 
 v.
 
 United States,
 
 152 U. S., 211, 38 L. Ed., 415, 14 S. Ct., 513.
 

 The evidence in this case shows that Richens, the abutting property owner, first erected a box which was unsatisfactory to the Post Office Department. Thereafter, he erected the box in question here on the side of a post road in a sparsely settled portion of the municipality and located similarly to other mailboxes along the same road.
 

 The primary duty in respect of the location of rural mailboxes rests with the mail carrier and the local postmaster. The carrier is required to report “badly located boxes” to the postmaster. The postmaster is charged with the duty, not only of giving special attention to the
 
 location
 
 of rural mailboxes along hard-surfaced roads, but also of making annual inspections and of taking action through the Post Office Depart^ ment in respect of boxes which do not conform to the postal regulations.
 

 While the rules,
 
 supra,
 
 require boxes to be placed to conform with the laws of the state or the regulations of the officials having supervision over the highways,
 
 *620
 
 yet this permissive recognition of state regulation is subject specifically to the rules and regulations of the Post Office Department in respect of accessibility, which calls for the exercise of judgment and discretion on the part of the postal authorities.
 

 While a city council might pass an ordinance attempting to regulate the location of rural mailboxes, yet ¡before any such mailbox could be declared a nuisance, either under or in the absence of such ordinance, it would be necessary to show that it had not been so placed on a post road with the approval of an agent of the Post Office Department. We must not lose sight of the statement of law made by the Attorney General of the United States,
 
 supra: “It
 
 follows that the fundamental test is not whether the attempted state exertion will affect the exercise of a federal function to an extent that will demonstrably impair or impede the exercise of such function; it need only appear that the state has thereby in any degree laid its regulative hand upon such function.”
 

 We do not mean to recede from the statement of law laid down in the third paragraph of the syllabus in the case of
 
 C. A. King & Co.
 
 v.
 
 Horton,
 
 116 Ohio St., 205, 156 N. E., 124, to wit: “3. The ‘police power’ is the power to guard the public morals, safety, and health, and to promote the public convenience and the common good, and is one of the powers not surrendered to the federal government, and therefore remains with the states respectively. It is within the power of the state to devise the means to be employed to those ends so long as they do not go beyond the necessities of the case and have a real and substantial relation to the object to be accomplished.”
 

 We are not here dealing with a question of concurrent occupation of the same field by the state and federal governments. What we have is a question of exclusive jurisdiction of one kind, to wit, post roads, on the part of the federal government, and of another
 
 *621
 
 kind, to wit, police power, on the part of the state. Exactly where one leaves, off and the other begins may be as difficult to determine as the age-old question relating to twilight and dawn. Neither are we dealing here with the liability, if any, of a post office patron.
 

 Suppose a disagreement arose between the Post Office Department and a municipality as to whether the location of a rural mailbox constituted a nuisance. Quoting from 14 American Jurisprudence, page 398: “The general rule deducible from the decisions appears to be that while the courts will interfere with the action of postal authorities where such action is without authority of law or in excess of the power granted by law, they will not ordinarily review the exercise of discretion within the scope of the authority with which the postal officials are invested by law, unless such discretionary action is clearly wrong or is tainted with fraudulent motive or bad faith. The action must be clearly wrong, however, for actions will not be reviewed in merely ‘doubtful cases.’ ” In the course of the opinion in
 
 Pensacola Telegraph Co.
 
 v.
 
 Western Union Telegraph Co.,
 
 96 U. S. 1, 9, 24 L. Ed., 708, 710, it was said: “The powers thus granted are not confined to the instrumentalities of commerce, or the postal service known or in use when the Constitution was adopted, but they keep pace with the progress of the country, and adapt themselves to the new developments of time and circumstances.”
 

 As we have no state laws or regulations sufficiently definite respecting the location of mailboxes, no speculation thereon should be indulged. Statutes like Sections 1199 and 7204, General Code, do not apply to roads within the limits of a municipal corporation. The provision of Section 3714, General Code, that “the council shall have the care, supervision and control of public highways * * * within the corporation, and shall cause them to be kept open, in repair, and free from nuisance” is, as pointed out above, in derogation of
 
 *622
 
 the common law. Even if this section were not to be strictly construed, the most liberal interpretation of it would not justify any interference with the location of a mailbox which, but for the provision
 
 supra
 
 of the federal Constitution, would constitute an obstruction in a highway. Statements of .law such as contained in the first paragraph of the syllabus of
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 City of
 
 Cincinnati, 76 Ohio St., 481, 81 N. E., 983, to the effect that public streets are subject to the
 
 absolute
 
 control of the legislative power of the state, must be read in connection with the facts of the particular case, and cannot be held as precedents for failure to recognize the superior power of federal authority in respect of post roads.
 

 The postal patron derives his right to place a mailbox on a post road where such box is accessible to a mail carrier without leaving his vehicle, from the Constitution of the United States and laws enacted thereunder. It would seem clear, therefore, that the municipal authorities could take no action in respect of the location of a mailbox on a .post road, unless and until •it had been brought to their attention that such box was not located as required by the Post Office Department.
 

 The evidence discloses that Richens, the abutting property owner, erected the box in question in the spring of'1932. In answer to the following question: “What kind of a box did you put on?” he replied: “My grandson made one and they refused to put the mail in there, and they told me I would have to get a full size mailbox and I went down to Sears Roebuck and bought a full size government mailbox.”
 

 Counsel for plaintiff sought upon cross-examination to show that the box in question was placed ‘
 
 ‘
 
 exactly as the other mailboxes were along the street.” The jury found “that the Richens mailbox was installed by him in about the same proximity to the pavement as other mailboxes which had existed for many years
 
 *623
 
 along Sprague road.” Such contention and finding tend to show that the box in question was placed where the post office authorities wanted it. Neither the mail carrier, the postmaster, nor any other witness was called to show that the box was not erected in accordance with the post office regulations.
 

 All the evidence in this case shows that the mailbox in question was not located on the paved portion of the road. The photographs introduced in evidence show that the box in question was located similarly to others in the neighborhood. The physical facts, as well as the lack of any credible evidence to the contrary, show that the plaintiff’s arm could not have come in contact with the mailbox unless the automobile in which she was riding had left the paved portion of the road. These physical facts must have been recognized by the trial court. Even though plaintiff’s only evidence on the subject was that the automobile had not left the paved portion of the road, the court charged the jury in part as follows: “If the mailbox in question was situated so close to the pavement that it was likely to cause harm to persons traveling along the highway and exercising ordinary care for their own safety, its existence at that point would constitute a nuisance,
 
 and this would he true even if a vehicle in order to come in contact with it would travel a short distance off the pawed portion of the roadway and on the dirt strip adjacent thereto.”
 
 (Italics ours.)
 

 In the. Court of Appeals, one judge held that the question of whether the mailbox was a nuisance was a question for the jury and voted for affirmance; another judge voted for reversal for the reason that the mailbox in question was as a matter of law not a nuisance; while the third judge voted “to reverse as manifestly against the weight of the evidence.” Thus, the judgment of the trial court was affirmed even though two judges thought it should be reversed. The judge voting for reversal on account of the weight of the evi
 
 *624
 
 dence stated that he could not join the judge who held that the mailbox in question was, as a matter of law, not a nuisance because of the principles announced by this court in the telephone-pole cases of
 
 Cambridge Home Telephone Co.
 
 v.
 
 Harrington, supra,
 
 and
 
 Ohio Bell Telephone Co.
 
 v.
 
 Lung, Admx., supra.
 
 It was correctly pointed out by the one judge that while the maintenance of telegraph poles within the highway is a private use, the maintenance of mailboxes is a public use. Cases like
 
 Yackee, Admx.,
 
 v.
 
 Village of Napoleon,
 
 135 Ohio St., 344, 21 N. E. (2d), 111, are not applicable here.
 

 It was said in the course of an opinion in the instant case by one of the judges of the Court of Appeals:
 

 “The common usage and practice of maintaining these mailboxes as this one was maintained is common knowledge to everybody. It was known to the driver of this automobile. It must have been common knowledge to the plaintiff. It was common knowledge to all the officers of the city of Berea charged with any responsibility or duty in the premises. Would or could these officers in the exercise of ordinary care, anticipate that injury would probably flow from the existence of this mailbox as located or even dream of such a consequence? The answer is that all reasonably prudent individuals would respond in the negative. * * *
 

 “A condition is not a nuisance merely because it is associated with an accident.
 

 ‘ ‘
 
 Considering the uniform use of mailboxes for these purposes and considering the uniform location of these mailboxes thus located for the purposes above expressed, and considering the common knowledge of every one who has attained school age of the practice and usage in these respects, it is my conclusion that the rural mailboxes erected and maintained substantially as referred to in the rule and regulation above
 
 *625
 
 quoted [Postal Guide, page 42, paragraph. 72], do not constitute nuisances as a matter of law.
 

 “It is my opinion and conclusion that the judgment should be reversed and final judgment entered for the appellant.”
 

 We agree with the foregoing reasoning and conclusion that on this record, as a matter of law, the mailbox in question was not a nuisance.
 

 It therefore follows that upon the foregoing ground the trial court erred in overruling defendant’s motion, made at the close of plaintiff’s evidence and renewed at the close of all the evidence, to direct a verdict for the defendant.
 

 The jury found that the mailbox in question had been installed on the side of the road “in about the same proximity to the pavement as other mailboxes which had existed for many years along Sprague road.”
 

 Plaintiff testified categorically that she knew the mailbox was there. She also testified that she had traveled the road before but could give no estimate of the number of times.
 

 Sprague read (on which the mailbox was located) is 60 feet wide with a pavement 18 feet wide.
 

 The accident occurred between 4:00 and 4:30 p. m. on August 30, 1932.
 

 The record shows that the mailbox was placed on the top of a four-inch square post set 27 inches away from the paved portion of the road. The post leaned away from the pavement so that immediately under the box the post was 30}4 inches from the pavement. From the ground to the bottom of the mailbox the distance was three feet nine inches.
 

 The box was of metal, 15 inches high and two feet long. From the face of the wood post to the front of the mailbox was nine and one half inches. The face of the box was 21 inches from the pavement. The box
 
 *626
 
 had a door opening toward the road, but there is no evidence in the record that the door was open.
 

 Plaintiff testified that the automobile in which she was riding “was an old model car, running boards were bigger than they are nowadays.” The jury found that the right running board extended eight or nine inches beyond the line of the door.
 

 The evidence does not disclose which side of plaintiff’s arm came in contact with the mailbox. The physician was asked:
 

 “Q. Where would the blow come that would make that break? A. It is hard to tell. It may come over the arm this way (indicating), it, may come in the elbow.”
 

 Plaintiff also testified:
 

 “Q. Do you know whether that mailbox struck any part of the ear, the wheels or the fender, or was any part of the car touched or scratched by that mailbox? A. No, there was not a mark on the car.”
 

 The jury found that one of “the direct and proximate causes- of the collision” was “the failure of Evelyn Bowman to keep her ear at a safe distance from the mailbox. ’ ’
 

 While Evelyn Bowman’s negligence may not be imputed to plaintiff, it does tend to explain the accident.
 

 WThile both plaintiff and the driver of the automobile testified repeatedly that the right wheels of the automobile did not leave the paved portion of the road, yet the physical facts show that the right wheels of the automobile must have left -the paved portion of the road in order that plaintiff’s arm could have come in contact with the mailbox. Defendant introduced two eyewitnesses- who testified that the automobile was driven off the paved road and was off the paved road at the time that the mailbox was hit.
 

 As stated by Blashfield in his Cyclopedia of Automobile Law and Practice, Volume 10, page 146:
 

 
 *627
 
 “Where facts testified to are opposed to all natural laws and common experience, so that it is inconceivable that any such thing could have occurred, courts will refuse to believe it, on the ground that they will take judicial notice of its incredibility.”
 

 In the first paragraph of the syllabus, in the case of
 
 Michalec, Admr.,
 
 v.
 
 Hutchison,
 
 123 Ohio St., 494, 176 N. E., 79, it was held: “Where it appears that, at the close of the plaintiff’s testimony or at the close of the entire evidence, there is no reasonable presumption other than that plaintiff’s negligence proximately contributed to his injury, it becomes the duty of the court to sustain motions in defendant’s favor for a directed verdict, unless the defendant’s, conduct amounts to wantonness or wilfulness.”
 

 The conclusion seems inescapable that the accident in question could not have happened without negligence on the part of plaintiff. She was familiar with the road and the location of the mailboxes, including the one here in question. It was broad daylight, and the evidence shows that the mailbox was in plain sight. Under such circumstances, a person of ordinary prudence would not have had any part of her arm out the window of an automobile. As a matter of law, plaintiff was guilty of negligence which was the proximate cause of her injury, and it was the duty of the court to sustain defendant’s motion for a directed verdict.
 

 As we hold that the judgment of the 'Court of Appeals should be reversed and final judgment rendered for the appellant for the reasons above set forth, it will not be necessary to discuss any other assignment of error.
 

 Judgment reversed and final judgment for appellant.
 

 Weygandt, C. J., Matthias, Hart and Zimmerman, JJ., concur.
 

 Bettman, J., not participating.