[Cite as *Snay v. Burr*, **2020-Ohio-3828.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY


Cletus Snay, et al.                                    Court of Appeals No. H-19-016

      Appellants                                  Trial Court No. CVC 2018 0969

v.

Matthew Burr, et al.                              **DECISION AND JUDGMENT**

      Appellees                                    Decided:  July 24, 2020

* * * * *

Kathleen J. St. John, Jamie R. Lebovitz, Jeffrey M. Heller
and Brian W. Parker, for appellants.

Douglas W. Leak, Kenneth A. Calderone and Anne M.
Markowski, for appellees.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgment of the Huron County Court of Common Pleas, which granted the motion for summary judgment by the defendants-appellees, Matthew and Diane Burr.  For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** On December 7, 2018, plaintiffs-appellants, Cletus and Kelly Snay, filed a complaint against defendants-appellees alleging claims of negligence, loss of consortium, and punitive damages resulting from a single-car vehicle accident. On a clear afternoon, December 19, 2016, Mr. Snay was severely injured after he lost control of his vehicle, presumably on a patch of black ice on Young Road in Bellevue, Huron County, Ohio, also known as township road No. 23, and swerved into appellees' mailbox, appellees' neighbor's mailbox, possibly other objects, and overturned into a ditch. Both mailboxes struck by Mr. Snay were located off the traveled portion of the public road. Appellants alleged that appellees' non-compliant construction and location of the mailbox proximately caused his injuries.

**{¶ 3}** Appellees generally denied the allegations and cross-claimed Mr. Snay's health care insurer and the Ohio Department of Medicaid for their subrogation interests. The State of Ohio Department of Medicaid answered asserting rights under R.C. 5160.37 and counterclaimed against appellees. After appellees voluntarily dismissed Mr. Snay's health care insurer, they filed a motion for summary judgment, which appellants opposed. The state of Ohio did not participate in summary judgment pleadings. On August 16, 2019, the trial court granted appellees' motion for summary judgment.

**{¶ 4}** Appellants then filed this appeal setting forth one assignment of error:

The Trial Court Erred in Granting the Defendants-Appellees' Motion for Summary Judgment.

## I. Summary Judgment

**{¶ 5}** We review de novo the trial court's summary judgment determination, employing the same Civ.R. 56 standard as trial courts. *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

**{¶ 6}** "The main purpose of the summary judgment statute is to enable a party to go behind allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Cunningham v. J. A. Myers Co.*, 176 Ohio St. 410, 413, 200 N.E.2d 305 (1964) (evaluating former R.C. 2311.041(D), now Civ.R. 56).

**{¶ 7}** Summary judgment may be granted only

if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * [and] that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

3.

**{¶ 8}** When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id.* A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id.*

## II. No Duty Owed to Mr. Snay

**{¶ 9}** We find there are no admissible facts in the record supporting a genuine issue of material fact that appellees owed a duty to Mr. Snay. Mr. Snay's injuries are undeniably significant, but as a matter of law, the appellees are not liable for them.

**{¶ 10}** "To establish actionable negligence, [plaintiff] must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

**{¶ 11}** To determine the first element, duty, the Ohio Supreme Court further guides us with respect to public roads, obstructions in the form of mailboxes, and the traveling public.

4.

{¶ 12} Where a post office patron erects and maintains a mailbox along a rural route in substantial compliance with postal regulations and in or about the same proximity to the paved portion of the road as other mailboxes along the same road, such mailbox does not constitute a nuisance. *Black v. City of Berea*, 137 Ohio St. 611, 32 N.E.2d 1 (1941), paragraph one of the syllabus; *Mfr.'s Natl. Bank of Detroit v. Erie Cty. Rd. Comm.*, 63 Ohio St.3d 318, 325, 587 N.E.2d 819 (1992), Moyer, C.J., concurring ("city not liable for collision with mailbox located close to the pavement of the roadway because there was no nuisance as a matter of law"). While the specific issue before the Ohio Supreme Court in those cases was political subdivision immunity, the underlying principles apply to this case regarding what duty, if any, appellees owed to Mr. Snay on December 19, 2016, for their off-road mailbox. The location of the mailbox outside of the traveled portion of Young Road is the relevant material fact in this case, not the composition of the materials used to erect the off-road mailbox.

{¶ 13} The Ohio Supreme Court guides us to the understanding that not every off-road obstruction in the right-of-way must be removed.

{¶ 14} "Right-of-way" means either of the following, as the context requires:

> (1) The right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path;

5.

(2) A general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority.

R.C. 4511.01(UU).

{¶ 15} A "'clear zone'" is an unobstructed area of the right-of-way beyond the pavement edge where an errant vehicle leaving the paved road can come to a stop or return safely to the pavement." *Link v. FirstEnergy Corp.*, 147 Ohio St.3d 285, 2016-Ohio-5083, 64 N.E.3d 965, ¶ 12. An obstacle, such as a mailbox, in the "clear zone" may remain in the discretion of the permitting authority who owns the right-of-way. *Id.* at ¶ 13. Such discretion does not "impose a duty to remove all obstructions within the clear zone unless the obstruction interferes with normal roadway travel." *Id.* at ¶ 37. "'Placement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public.'" *Id.* at ¶ 24, quoting *Turner v. Ohio Bell Tel. Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, ¶ 20. Similar to this case, there is no evidence that the mailbox's placement created an unsafe condition for normal travel because had the motorist stayed within the marked, paved lanes, the vehicle would not have come in contact with appellees' mailbox. *Id.* at ¶ 35. "Absent evidence of interference with the usual and ordinary course of travel on the roadway, [appellees] did not have a duty to remove off-road

6.

objects within the public right-of-way that might come in contact with wayward vehicles." *Id.* at ¶ 39. Citing R.C. 4511.33, the Ohio Supreme Court stated, "Indeed, a motorist is not free to drive on the right-of-way as he or she pleases." *Turner* at ¶ 17.

{¶ 16} It is undisputed appellees' mailbox did not cause Mr. Snay to lose control of his vehicle. It is speculated in the record that Mr. Snay lost control when he hit some black ice on Young Road that winter afternoon. This court recognizes that black ice forming on the pavement is an ordinary and expected consequence of winter precipitation in Ohio that should be anticipated by travelers. *Miller v. Tractor Supply Co.*, 6th Dist. Huron No. CVC20100109, 2011-Ohio-5906, ¶ 14. Any duty to remove black ice forming on a public road, assuming it is an obstruction, is on the political subdivision responsible for the ownership and maintenance of that road, which is not appellees. *See* R.C. 2744.02(B)(3). As a matter of law, appellees also owed no duty to Mr. Snay to remove any off-road natural accumulation of black ice. *See Brinkman v. Ross*, 68 Ohio St.3d 82, 623 N.E.2d 1175 (1993), syllabus.

{¶ 17} It is further undisputed that appellees' mailbox was not located on the paved, traveled portion of the public road. *Black*, 137 Ohio St. at 623, 32 N.E.2d 1. Whether appellees' mailbox was located one-foot, nine-inches off-road onto their own, private property adjacent to Young Road, as appellees contend, or located one-foot, nine-inches off-road from the paved portion of Young Road and within the right-of-way, as appellants contend, that dispute is not a genuine issue of material fact affecting the outcome of the case because they both agree appellees' mailbox was not in the traveled

7.

portion of Young Road. This fact was corroborated by the first responder to the accident scene, Trooper Robert Jones, who testified at his June 26, 2018 deposition:

Q: You would agree with me that both of those mailboxes [struck by Mr. Snay's vehicle] were not on the traveled portion of the road, correct?

A: Yes, ma'am.

Q: So Mr. Snay would have had to leave the road to strike those mailboxes?

A: Yes, ma'am.

{¶ 18} We find appellants offered no evidence in the record that appellees' mailbox is a fixture that "incommodes" public use of the road. *Id.* at 613. "The erection and maintenance of mailboxes upon a post road is a public use, being for both the delivery and receipt of mail." *Id.* at 614.

{¶ 19} We find that under a similar set of facts to this case, the Fifth District Court of Appeals granted summary judgment to homeowners who owed no duty to a passing motorist for the existence of an off-road mailbox. *Battista v. Bucceri*, 5th Dist. Stark No. 2014CA00027, 2014-Ohio-4437, ¶ 24. The court faced a similar set of facts when the operator of a motor vehicle was injured after sliding on black ice and struck a mailbox. *Id.* at ¶ 1. Similar to this case, the mailbox was not on any part of the travel portion of the public road and was not the cause of the motorist to lose control and skid off the pavement. *Id.* at ¶ 15. Similar to this case, the motorist claimed the adjacent

8.

homeowners were negligent in their construction of their mailbox within the right-of-way. *Id.* at ¶ 2. Similar to this case, the motorist claimed, through expert testimony, the reinforced construction materials of the subject mailbox due to vandalism violated the technical requirements and intent of postal guidance on mailboxes resulting in an unreasonable off-road hazard capable of causing substantial injury. *Id.* at ¶ 11. The subject mailbox was one-foot, six-inches from the paved portion of the public road, which is closer than in this case. *Id.* Similar to this case, there are no statutory or township restrictions in the record regarding the erection of mailboxes. *Id.* Similar to this case, the motorist argued the adjacent homeowners owed a duty to any passing motorist not to create an obstruction and/or hazard with their mailbox. *Id.* at ¶ 14. The Fifth District Court of Appeals, however, determined the homeowners owed no duty to a passing motorist because "[t]he only relationship available to a landowner and a traveling motorist on the roadway is that of a trespasser. There is no expressed or implied relationship between the parties. [Landowners] were free to assume that no one would hit their mailbox or cross through their property." *Id.* at ¶ 17. The court found that the probable cause of the plaintiff's injuries was the plaintiff's failure to control the vehicle on an icy road, not the position of the mailbox in the right-of-way and off the pavement. *Id.* at ¶ 21-22. We find the facts in this case mirror *Battista* and we reach the same conclusion. Expert testimony that an off-road mailbox is an "unreasonable hazard," which is within the comprehension of a layperson, is not necessary and does not create a

9.

genuine issue of material fact under the relevant law in Ohio. *Miglioro v. Merritt*, 6th Dist. Lucas No. L-11-1136, 2012-Ohio-3614, ¶ 13.

{¶ 20} The Fifth District Court of Appeals previously affirmed the grant of summary judgment to homeowners who owed no duty to a passing motorist for the existence an off-road mailbox. *Sweitzer v. Houtman*, 5th Dist. Delaware No. 98CA-E-11-058, 1999 WL 172891, *3 (Feb. 18, 1999). In that case, the motorist swerved into the homeowner's mailbox to avoid an oncoming truck, and the motorist's truck and the mailbox were damaged. *Id.* at *1. Similar to *Battista*, the subject mailbox was one-foot, six-inches from the paved portion of the public road. *Id.* Similar to this case, the motorist offered his opinion that the mailbox was too close to the road and sought compensatory and punitive damages. *Id.* Similar to this case, the motorist argued the mailbox's "more rigid" construction made it foreseeable that a passing motorist could be injured. *Id.* at *2. The court found the homeowners owed no duty to a passing motorist because the motorist's action to avoid a collision with an oncoming truck proximately caused the injuries. *Id.* at *3. Specifically, the court stated, "We further agree with the trial court that the negligence of that truck driver does not transfer to appellee." *Id.* In this case it is undisputed that black ice is speculated to have caused Mr. Snay to lose control of his vehicle, and, under *Sweitzer,* if there was negligence attributed to the owner of Young Road regarding the black ice, that negligence did not transfer to appellees.

{¶ 21} The Ninth District Court of Appeals reviewed a case containing claims of negligence, contributory negligence and qualified nuisance following injuries sustained by a motorist who lost control of a vehicle, left the paved road, and struck four mailboxes set on a single pole, where one mailbox was filled with concrete. *Harkins v. Shelter*, 9th Dist. Summit No. C.A. 12372, 1986 WL 7752, *1 (July 9, 1986). A jury found the motorist was 20 percent more negligent than the adjacent homeowner. *Id.* at *2. The motorist's own negligence was a defense to holding the homeowners liable on a theory of qualified nuisance, which is not a claim in this case. *Id.* at *4. However, other than the fact of the jury's apportionment of negligence, the decision does not review the duty element of negligence, and we are left to conclude that only the unique facts of that case gave rise to the defendant's unidentified duty to a passing motorist.

{¶ 22} Even when viewing the evidence in a light most favorable to appellants, they offer no evidence that appellees' mailbox interfered with the usual and ordinary course of vehicle travel on the public road so long as the public stayed on the portion intended, marked, and designated for such travel. The record contains no evidence that the location of appellees' mailbox was the "proximate and contributing cause of the collision," regardless of whether or not appellees received formal approval for its specific location from the township or county. *Short v. Ohio Bell Tel. Co.*, 35 Ohio Law Abs. 375, 37 N.E.2d 439, 440 (4th Dist.1941).

{¶ 23} Appellants merely offer as "evidence" speculations that Mr. Snay's injuries must have been because appellees' mailbox post was "non-conforming" to postal

guidelines.  There is no evidence in the record that such postal guidelines are mandates with the force of law, and their alleged violation does not show negligence per se. *Shrieve v. United States*, 16 F.Supp.2d 853, 858 (N.D.Ohio 1998); *Harkins* at *3-4. Alleged violations of regulations, generally, do not give rise to negligence per se.  *See Floering v. Roller*, 6th Dist. Wood No. WD-02-076, 2003-Ohio-5679, ¶ 22, *overruled on other grounds*, *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 25.  Evidence of an alleged violation of an administrative rule "could be admissible as evidence of negligence, but nothing further."  *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 20.  Nevertheless, appellants' evidence does not defeat summary judgment.

{¶ 24} "As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine.  The plaintiff can avoid such defenses only with a per se finding of negligence * * *."  *Id.* at ¶ 21; *Riehl v. Bird's Nest, Inc.*, 6th Dist. Ottawa No. OT-09-003, 2009-Ohio-6680, ¶ 33; *Snyder v. Kings Sleep Shop, L.L.C.*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003, ¶ 20.  The erection of appellees' mailbox is not negligence per se.

{¶ 25} It is undisputed that any vehicle traveling along the relevant stretch of Young Road used by Mr. Snay to commute to work could see all of the off-road mailboxes, not just appellees' mailbox, lining that portion of Young Road.  *Black*, 137 Ohio St. at 625, 32 N.E.2d 1.  Even if Mr. Snay was not trespassing when his vehicle left

12.

the paved road to strike appellees' mailbox, the mailbox was an open and obvious hazard that negates the duty prong of negligence. *Caruso v. Erie Shoreline Properties, LLC*, 6th Dist. Ottawa No. OT-17-028, 2018-Ohio-1659, ¶ 10-11. Evidence that Mr. Snay actually saw appellees' mailbox is not required to apply the open-and-obvious doctrine so long as there is evidence the mailbox was readily observable. *Czepak v. Heiges*, 6th Dist. No. OT-10-039, 2011-Ohio-5523, 968 N.E.2d 1027, ¶ 22.

{¶ 26} Trooper Jones testified that the stretch of Young road where the accident occurred is "relatively flat" with all of the mailboxes visible on the side of the road.

Q: To your knowledge, there was nothing obstructing Mr. Snay's view at the time of the collision, correct?

A: Correct.

{¶ 27} In addition, the Ohio Supreme Court requires substantial compliance, not strict compliance, with postal regulations for a mailbox on a rural route, known as a post road. *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 20, citing *Black* at paragraph one of the syllabus. "The postal patron derives his right to place a mailbox on a post road where such box is accessible to a mail carrier without leaving his vehicle, from the Constitution of the United States and laws enacted thereunder." *Black* at 622.

{¶ 28} Appellee Matthew Burr testified at his June 26, 2018 deposition that prior to erecting a new mailbox, he obtained from his local post office the guidelines for the mailbox type, location and materials. He used materials that he believed would withstand

13.

vandalism, a recurring problem. While the Ohio Supreme Court has not opined on the postal guidelines in this case, it has opined on substantial compliance with postal regulations, generally. These regulations include the type of mailbox erected and located on the right side of the road regularly traveled by a rural carrier and in such position as to be easily and safely accessible for the delivery and collection of mail by the carrier without leaving his conveyance. *Id.* at 616-617. Rural postal carriers are to report to their postmaster insecure or badly-located mailboxes. *Id.* at 617. Of paramount importance in the postal regulations is the convenience to the rural carrier: "'boxes maintained by patrons of rural routes shall be so placed that they may be conveniently served by the carriers without the need of leaving their conveyances.'" (Citation omitted.) *Id.* at 617-618. There is no evidence in the record that appellees' mailbox did not provide the rural carrier convenient and safe accessibility without leaving their conveyances or that the postmaster received a complaint that appellees' mailbox was "insecure or badly-located."

{¶ 29} The law recognizes that when a homeowner places an immovable object on his property or off the traveled portion of a public road that is not in danger of falling into the public road or of obstructing traffic or impeding the vision of the motorist, the homeowner is not liable for the motorists' injuries. For example, the Ohio Supreme Court affirmed that its decisions in *Strunk v. Dayton Power & Light Co.*, 6 Ohio St.3d 429, 453 N.E.2d 604 (1983) and *Mfr.'s Natl. Bank of Detroit*, supra, apply to liability of private landowners for injuries caused by objects within the right-of-way where "whether

14.

an object that is not on the improved portion of the road but within the right-of-way is a condition that makes the roadway unsafe for the *usual and ordinary course of travel*." (Emphasis sic.) *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 22. There is no evidence in the record that appellees' mailbox made Young Road unsafe for the usual and ordinary course of travel. We find the record shows that for five years prior to the accident, Mr. Snay operated his personal vehicle over a portion of Young Road on a daily basis to commute to work. Each time on Young Road, he passed appellees' mailbox without incident.

{¶ 30} This court granted summary judgment to homeowners who owed no duty to a passing motorist for an off-road tree in the clear zone. *Floering*, 6th Dist. Wood No. WD-02-076, 2003-Ohio-5679, at ¶ 29 ("since normal traffic does not drive in the clear zone, there is no duty to remove an off-the-road obstruction that does not affect travel upon the highway."). A passenger was killed when the vehicle operator left the paved road and struck a tree growing in the right-of-way. *Id.* at ¶ 9. "The tree in this case does not obstruct a driver's vision while traveling upon the regularly traveled portion of the highway. It can only be a hazard when a vehicle leaves the highway." *Id.* at ¶ 18. We declined to impose a greater duty on the adjacent landowner to remove an off-the-road hazard that did not affect travel upon the highway. *Id.* at ¶ 19, citing *Ramby v. Ping*, 2d Dist. Greene No. 93-CA-52, 1994 WL 124829, *3 (Apr. 13, 1994) (no adjacent landowner duty to keep right-of-way free from an off-road, large stone pillar on the possibility that vehicles may leave the traveled portion of the roadway).

15.

[S]olid objects (such as trees, signposts, utility poles, mailboxes, and boulders) within the right-of-way are not nuisances unless the object interferes with the safety of the usual and ordinary course of travel on the regularly travelled portion of the roadway. No precedent exists for imposing a duty on public or private landowners to remove an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway. Otherwise, every tree and solid fixed object on roadsides and road-shoulders would impose potential liability on public and private landowners for collisions occurring whenever a vehicle was driven off-road and into the object.

*Ramby* at *3, citing *Mfr.'s Natl. Bank of Detroit*, 63 Ohio St.3d at 323, 587 N.E.2d 819. The Ohio Supreme Court cited with approval both *Ramby* and *Floering*. *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 23.

{¶ 31} Appellants allege that but-for the location and erection of appellees' mailbox on Young Road on the date of his accident, Mr. Snay might not have struck the mailbox, overturned his vehicle in a ditch, or been injured. Such speculation rests on an unsupported inference that appellees' mailbox specifically and proximately caused Mr. Snay's vehicle to veer off Young Road in the first place. There is no evidence of such proximate causation. The "piling" of inference upon inference, which amounts to impermissible speculation, does not create a material issue of fact to defeat summary

judgment. *Moore v. Ohio Valley Coal Co.*, 7th Dist. Belmont No. 05 BE 3, 2007-Ohio-1123, ¶ 45; *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988), citing Civ.R. 56(E).

{¶ 32} We conducted a de novo review of the record using the well-established standards under Civ.R. 56 and find there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion that appellees are entitled to summary judgment as a matter of law that they owed no duty to Mr. Snay when he left the traveled portion of the public road to strike their off-road mailbox.

{¶ 33} Appellants' sole assignment of error is not well-taken.

### III. Conclusion

{¶ 34} On consideration whereof, the judgment of the Huron County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J._____

Thomas J. Osowik, J._____
CONCUR.

Christine M. Mayle, J.,
DISSENTS AND WRITES
SEPARATELY.

_____
JUDGE

_____
JUDGE

**MAYLE, J.**

{¶ 35} I respectfully dissent from the majority decision.  In my view, the majority overlooks the role of foreseeability in a duty analysis, never acknowledging Matthew Burr's admissions that in constructing his mailbox, he consciously disregarded postal recommendations that he knew were intended to alleviate "a concern for errant cars going off the road and striking a mailbox."  In addition, the majority fails to appreciate crucial distinctions in the cases it relies upon, inaccurately characterizes the Snays' arguments, and disregards their summary-judgment quality evidence.  Its proximate cause analysis is similarly flawed, allowing the role of the jury to be usurped.

18.

{¶ 36} Because of these shortcomings, I more fully explore the facts giving rise to the Snays' claims, and analyze—in depth—the cases pertinent to the parties' position.

## A. Background

{¶ 37} On December 19, 2016, Cletus Snay ("Cletus") was involved in an unwitnessed, single-vehicle accident on Young Road in Bellevue, Ohio. It is believed that Snay encountered black ice, causing his truck to slide off the right side of the roadway, strike two mailboxes, and overturn. As a result of the accident, Snay sustained multiple neck fractures, traumatic brain injury, arterial dissection, and respiratory failure. He is permanently paralyzed.

{¶ 38} Snay and his wife sued Matthew Burr ("Matthew") and Diane Burr for negligence, loss of consortium, and punitive damages. They contend that Cletus's vehicle overturned because it collided with the Burrs' mailbox. Matthew constructed the mailbox himself using a "thick, non-breakaway metal pipe" to deter vandals from targeting his mailbox. The Snays allege that the Burrs were "negligent, reckless and careless in erecting their mailbox," the mailbox constituted a nuisance, and the mailbox was defective and built in a manner that violated Federal Highway Administration guidelines.

{¶ 39} The Burrs moved for summary judgment. They argued that they owe no duty of care to motorists who drive off the roadway, and they argued that their actions did not proximately cause injury to Snay. In a judgment journalized on August 16, 2019, the trial court granted summary judgment to the Burrs. It held that "Ohio law does not

impose a duty owed to motorists who lose control of their vehicles, leave the traveled portion of the roadway, and strike an off-the-road object within their right of way." It further held that "there is no evidence that Defendants [sic] mailbox had any affect [sic] on the ability of motorists to travel safely on the regularly traveled portion of the highway." The trial court did not reach the issue of proximate cause.

## B. The Accident

{¶ 40} On December 19, 2016, at approximately 2:44 p.m., Cletus was driving his Ford F-250 on Young Road on his way to work. Young Road is a two-lane road with one lane in each direction. It is 60 feet wide. Twenty feet are paved, leaving a 20-foot, unpaved right-of-way on either side of the pavement. The speed limit is 55 m.p.h.

{¶ 41} While the skies were clear that afternoon, Young Road was wet and icy. The county plow truck had been out earlier that afternoon depositing salt on the road, but patches of black ice remained. It is believed that Cletus's truck slid off the right side of the road, fishtailed, struck the Burrs' mailbox, overturned, struck the Burrs' neighbor's mailbox, and tumbled until finally coming to rest in the Burrs' neighbor's yard.

{¶ 42} Cletus was life-flighted to St. Vincent Mercy Medical Center in Toledo. He sustained serious, permanent injuries, including three neck fractures, and remains a quadriplegic. He has incurred and will continue to incur significant medical expenses, and he is unable to work.

20.

## C. The Mailbox

{¶ 43} The Burrs have lived on Young Road since approximately 1981. Their mailbox is positioned in the right-of-way, one foot and nine inches from the paved portion of the road. Their neighbor's mailbox is three feet, two inches off the paved portion of the road.

{¶ 44} The mailbox that existed when the Burrs moved into their home was affixed to a post made from a six-by-eight-inch wooden railroad tie. The mailbox sustained damage over the years: a farmer hauling a wagon full of hay once hit the mailbox while swerving to avoid an oncoming vehicle; someone threw a pumpkin at the mailbox; and snow plows routinely pushed heavy snow against the mailbox. Matthew performed minor repairs when these incidents occurred. In 1996, however, the Burrs' mailbox was repeatedly vandalized, eventually causing the post to crack. Matthew decided to build a sturdier foundation for the mailbox.

{¶ 45} Before constructing the new mailbox, Matthew went to the Bellevue Post Office to get information about installing mailboxes. The person at the counter directed him to a single-page instruction sheet for installing rural mailboxes. Matthew recalled that it was recommended that the mailbox be somewhere between 40 and 45 inches tall, that the post be constructed of either a four-by-four piece of wood or a metal pipe no more than two inches in diameter, and that the post be buried no more than two feet.

{¶ 46} Because his mailbox had been targeted by vandals, Matthew decided that he would follow the recommendations only "as closely as [his] situation would allow."

He "made an assessment that the height from the ground was very important; the distance from the curb was very important; but [he] had the ability to modify the size of the post and how far [he] needed to put it in the ground * * *."

{¶ 47} Matthew found a metal pipe, eight inches in diameter (six inches wider than recommended) and approximately six-and-a-half feet long. He dug a hole and buried the pipe about three feet below ground (12 inches deeper than recommended) so that it would stand approximately 42 inches tall. He filled the hole with dirt and stones. He also had bags of concrete mix left over from a prior sidewalk project. He dumped the mix into the hole along with the dirt. He did not add water to it because it would have been difficult to carry it all the way to the curb, but he knew that rain water might "percolate" down and possibly cause the concrete to set if the mix was still good.

{¶ 48} At his deposition, Matthew was asked about his understanding of why the postal service recommends that a mailbox post be constructed using a pipe no larger than two inches in diameter and buried no more than two feet. His testimony made clear that he understood that these recommendations exist because of concern for motorists who may unintentionally veer from the paved road:

Q: Did you have an understanding in reviewing the recommendations and then installing the pipe that safety to traffic was one of the reasons for those recommendations?

A: Yes, I think that's correct. You know, they were concerned about, you know, traffic.

22.

Q: And a concern for errant cars going off the road and striking a mailbox?

A: Yes. Yes, there's probably – some concern there, yes.

{¶ 49} Matthew testified that he considered the potential hazard to motorists when he constructed his mailbox:

Q: As you're installing the new mailbox in 1996, did you consider the possibility of cars making contact with the mailbox?

A: Yes, actually I did. That's why I didn't make it any – I made it so that it could move. If enough force was applied to it, it would lay over.

{¶ 50} He communicated in particular that he was aware that the county snowplow may hit the mailbox, potentially causing damage to the snowplow. He was asked how he knew that he had constructed the mailbox such that it would yield if hit by a vehicle:

Q: Okay. And how do you know that you made it that was, that it would move over if someone hit it?

A: Because I didn't go through the whole process of filling this thing with cement and doing all kinds of crazy things that – I didn't put it in down six feet in the ground. I tried to keep this so that I was relatively confident – and I was mostly worried about the snowplow. If the snowplow would hit it, it would fold it back, you know, and not causing the snowplow a lot of damage.

23.

{¶ 51} In fact, Matthew testified that he discussed his mailbox with the county maintenance employee who drove the snowplow. The maintenance employee did not like the mailbox and told Burr in 1997, "I think your mailbox is illegal":

> I knew that the township maintenance guy, he didn't like my post because, once again, he was afraid he would go off the road and strike it with his snowplow and he didn't like it. So I knew that.
>
> * * *
>
> He didn't like my post after I put it in because he does the snowplowing. And so when he came down my road, he knew he couldn't be sloppy, he couldn't go off the road, so he didn't like it.

Matthew told the maintenance worker that he did not think there was such thing as an "illegal" mailbox.

{¶ 52} Notably, after Cletus's accident, an excavator had to be used to remove the metal mailbox post.

{¶ 53} Matthew testified that he was aware of three other instances when cars either swerved or slid off of Young Road. He and his wife both testified at deposition that Young Road was very slippery on the day of the crash. Nevertheless, Matthew maintained that he could not have anticipated that a car would slide off the road and into that "one-square-foot space" on his property.

24.

## D. Duty

{¶ 54} The Burrs argue—and the trial court found—that Ohio case law has established that a property owner owes no duty to a motorist whose vehicle leaves the traveled portion of a road and strikes an off-the-road object in the right-of-way. The Snays maintain that the Burrs have interpreted Ohio case law too broadly and that the case law is distinguishable. They insist that while Ohio courts may *generally* hold that a landowner owes no duty to errant motorists who strike an off-the-road hazard, they do not hold that a landowner may *never* owe a duty.

{¶ 55} To succeed on a claim for negligence, "a plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 10. The existence of a legal duty may be established by common law, legislative enactment, or the particular circumstances of a case. *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23. "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff. *Id.* at ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). In the absence of duty, a defendant will not be legally liable for negligence. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989), *holding modified by Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989). The existence of duty is a question of law for the court to determine. *Wallace* at ¶ 22.

{¶ 56} "The existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act," the court may find that a duty exists. *Id.* at ¶ 23. "Accordingly, the existence and scope of a person's legal duty is determined by the reasonably foreseeable, general risk of harm that is involved." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 24. The Burrs emphasize that numerous Ohio courts—the Ohio Supreme Court included—have addressed a landowner's duty to a motorist whose vehicle leaves the paved right-of-way and strikes an off-road object. They cite *Turner v. Ohio Bell Tel. Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, as providing the current state of the law.

{¶ 57} I begin by analyzing *Turner*, as well as various Ohio cases that are discussed in *Turner*, below. At the outset, I note that none of those cases concern the potential liability of a private landowner for injuries resulting from an accident involving a mailbox on the landowner's property. For that reason, I also analyze Ohio cases involving mailbox-related negligence claims. Finally, I apply *Turner* and the other Ohio cases to determine whether the Burrs owed a legally-cognizable duty under the particular facts of this case.

### 1. *Turner*

{¶ 58} In *Turner,* a driver failed to negotiate a curve in the darkness and fog, drove his vehicle off the road, and struck a utility pole, killing his passenger. The plaintiff sued the utility company, arguing, inter alia, that it was negligent in "placing,

26.

maintaining and continuing to utilize the utility pole in such close proximity to the traveled portion" of the road. *Id.* at ¶ 2. The trial court granted summary judgment in favor of the utility company, holding that the pole did not constitute an obstruction dangerous to anyone properly using the highway and concluding that the plaintiff could not demonstrate a breach of the duty of care.

{¶ 59} On appeal, the Eighth District reversed. It held that "liability may be imposed where the placement of a pole in close proximity to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm to users of the roadway," and concluded that "a jury should decide the reasonableness of the pole placement based upon the facts of the case." *Turner v. Ohio Bell Tel. Co.*, 8th Dist. No. 87541, 2006-Ohio-6168, ¶ 17. It acknowledged that its decision was in conflict with other Ohio appellate cases. The Ohio Supreme Court accepted review.

{¶ 60} The Ohio Supreme Court noted that public utility companies "have enjoyed at least a qualified right to place utility poles within the right-of-way of public roads since 1847" on the condition "that the utility poles not incommode the public in the use of the roads or highways." *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 7. It explained that "[t]oday, before erecting poles or other fixtures on a public right-of-way, a utility company is generally required to obtain the approval of the public entity that owns the right-of-way," and "[i]n the case of highways that are part of the state system, * * * approval may be granted only when the use 'will not incommode the traveling public.'" *Id.,* quoting R.C. 5515.01. It articulated that the issue that must be

27.

resolved is "when does a utility pole incommode the public in the use of the roads or highways?" *Id.* at ¶ 8.

{¶ 61} The court examined how courts have resolved this issue over the years. It explained that early cases recognized that the traveling public has a right to the use of public highways that is superior to the rights of public utilities to place their posts within the right-of-way. *Id.* at ¶ 8, citing *Cambridge Home Tel. Co. v. Harrington*, 127 Ohio St. 1, 186 N.E. 611 (1933). But as cases emerged "involving collisions with utility poles located off the improved portion of the highway but within the right-of-way," courts began to recognize that "the traveling public has no right to drive upon that portion of a public highway which is not dedicated, improved and made passable for vehicular use." *Id.* at ¶ 12, quoting *Ohio Postal Tel.–Cable Co. v. Yant*, 64 Ohio App. 189, 193, 28 N.E.2d 646 (5th Dist.1940).

{¶ 62} Ultimately, the Ohio Supreme Court held that "when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel." *Id.* at ¶ 21. But the court signaled that this rule may have implications beyond utility poles, noting that its holding was "consistent with the approach that we have taken regarding liability of political subdivisions and private landowners for injuries caused by *objects* within the right-of-way of the road." (Emphasis added.) *Id.* at ¶ 22. It cited two of its decisions—*Strunk v. Dayton Power &*

28.

*Light Co.*, 6 Ohio St.3d 429, 453 N.E.2d 604 (1983) and *Mfr.'s Natl. Bank of Detroit v. Erie Cty. Rd. Comm.*, 63 Ohio St.3d 318, 587 N.E.2d 819 (1992)—as providing that the salient issue in such cases is whether the object "makes the roadway safe for the *usual and ordinary course of travel*." *Id.* (Emphasis in original).

{¶ 63} In *Strunk*, the decedent's vehicle was struck from behind, forcing it off the highway and into a light pole located off the traveled portion of the highway. His estate sued a number of defendants, including the city of Dayton. The plaintiff alleged that the city "engaged in a governmental function when it purchased, installed and approved the light pole for the purpose of illuminating the highway and that the pole constituted an unreasonably dangerous hazard." *Id.* at 429. The trial court granted the city's Civ.R. 12(B)(6) motion and the appellate court affirmed. The Ohio Supreme Court framed the issue on appeal as "whether a municipality's duty to keep streets and highways free from nuisance, as provided in R.C. 723.01, extends to a driver of an automobile which collides with a light pole off the traveled portion of the roadway." *Id.* at 430.

{¶ 64} As articulated by the court, R.C. 723.01 obligated the city "to keep highways and streets open for the purpose for which they are designed; that is, to afford the public a safe means of travel." *Id.* It concluded, however, that that duty did not extend past the portion of the highway considered the berm or shoulder. Because the light pole was located adjacent to the roadway and the shoulder, the court held that it was not a portion of the highway, therefore, the city owed no duty to keep that area open, in repair, and free of nuisance.

29.

{¶ 65} In *Mfr.'s Natl. Bank of Detroit,* the plaintiff was stopped at an intersection but her view was blocked by corn that was growing in the right-of-way within eight feet of the road. The plaintiff proceeded through the intersection though her vision of intersecting traffic was impaired. Her vehicle was struck broadside, killing her husband and daughter. She brought suit in federal court against the township responsible for maintaining the roads and the abutting landowner. The Sixth Circuit Court of Appeals certified questions to the Ohio Supreme Court concerning the duties owed by the defendants.

{¶ 66} With respect to the township, the court held that "[a] permanent obstruction to visibility, within the highway right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable under R.C. 2744.02(B)(3)." *Id.,* at paragraph one of the syllabus. With respect to the landowner, the court held that "[w]here an abutting landowner or occupier uses the highway right-of-way in a manner inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to users of the highway, the land owner or occupier may be liable for damages proximately caused by the improper use of the right-of-way." The court concluded that "[g]rowing crops in the right-of-way serves no highway purpose," and "[f]urthermore, if the crops obstruct a driver's vision in a way that creates a hazard to safe travel on the highway, the usage is inconsistent with the right-of-way's purpose." *Id.* at 324.

30.

**{¶ 67}** Besides *Strunk* and *Manufacturer's*, the Ohio Supreme Court also cited with approval the Second District's holding in *Ramby v. Ping*, 2d Dist. No. 93-CA-52, 1994 WL 124829 (Apr. 13, 1994) and our holding in *Floering v. Roller*, 6th Dist. No. WD-02-076, 2003-Ohio-5679—both of which were relied upon by the trial court and the Burrs on appeal. *Ramby* and *Floering* declined to find a duty on the part of landowners who failed to remove off-road hazards from the right-of-way, outside the usual and ordinary course of travel.

**{¶ 68}** In *Ramby*, the driver of a vehicle left the paved surface of the road and hit a stone pillar located somewhere between five and eight feet from the pavement. The court considered the potential liability of both the city responsible for maintaining the road and the landowner on whose property the pillar was located. (It was unclear whether the pillar was in the right-of-way.) The court held that "[n]o precedent exists for imposing a duty on public or private landowners to remove an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway. Otherwise, every tree and solid fixed object on roadsides and road-shoulders would impose potential liability on public and private landowners for collisions occurring whenever a vehicle was driven off-road and into the object." *Id.* at *3. It explained that a duty to remove the pillar would arise "only if the pillar interfered with or rendered unsafe the usual and ordinary course of traffic on the regularly travelled portion of the roadway." *Id.* at *5.

31.

{¶ 69} In *Floering*, the driver struck a tree that was growing in the right-of-way, three to five feet off the side of the road. The plaintiff sued the township responsible for maintaining the road and the trust that owned the property. In considering the duty owed by the trust, we observed that the tree did not "obstruct a driver's vision while traveling upon the regularly traveled portion of the highway," and was "only * * * a hazard when a vehicle leaves the highway." *Id.* at ¶ 18. Additionally, we noted that the township had never determined that the tree should be removed. We, therefore, concluded that the landowner owed no duty to remove it. The plaintiff pointed out that the Ohio Department of Transportation Location and Design Manual suggests that there be a clear zone maintained beyond the pavement into the right-of-way, within which a vehicle that has left the highway may safely recover. We held, however, that the manual did not give rise to a duty on the part of the landowners to remove the tree.

{¶ 70} The Ohio Supreme Court reconciled these cases, which found no duty, with our decision in *Swaisgood v. Puder*, 6th Dist. No. E-06-033, 2007-Ohio-307, *aff'd*, 118 Ohio St.3d 445, 2008-Ohio-3177, 889 N.E.2d 1018, ¶ 26, which held that a utility company owed a duty under the facts of that case.

{¶ 71} In *Swaisgood*, a tractor-trailer struck a Verizon utility pole while making a right-hand turn. The pole was located at the corner of the intersection, three feet nine inches from the paved road—the permit approved placement of the pole 20 feet from the intersection. There was evidence that the pole did not allow sufficient clearance for long vehicles to make a proper right-hand turn without swinging into the opposing lane of

32.

traffic.  As a result, some trucks' tires would be forced off the paved road into the non-paved "traveled way," and, in fact, there had been prior accidents involving this pole.  *Id.* at ¶ 23.  We held that the evidence was "sufficient to establish a genuine issue for trial regarding whether Verizon placed or maintained the pole so close to the road as to create an unreasonable risk of harm for the traveling public."  *Id.* at ¶ 26.

{¶ 72} Following its lengthy analysis of the evolution of the case law, the Ohio Supreme Court ultimately concluded that *Swaisgood* was distinguishable because the pole in that case interfered with normal turns, whereas the facts of *Turner* demonstrated that (1) the utility pole was erected pursuant to a permit, (2) the utility pole was located in the right-of-way but off the improved portion of the road, and (3) a motorist properly using the usual and ordinary course of travel would not come into contact with the utility pole.  Therefore, the court held, "the utility pole did not incommode or interfere with the public's use of the highway."  *Turner* at ¶ 26.

### 2.  The Snays' Arguments

{¶ 73} The Snays acknowledge the courts' holdings in *Turner*, *Strunk*, *Manufacturer's*, *Ramby*, and *Floering*, but they maintain that those cases are distinguishable.  They argue that the rule announced in *Turner* was directly tied to the fact that it was a utility pole at issue and utility companies must first obtain permission from a governmental authority before installing their poles.  They also insist that *Ramby* and *Floering* articulate an important exception to the general "no duty" rule:  that a

33.

property owner *may* owe a duty where he or she has actual or constructive knowledge that the object poses a hazard to the use of the highway.[1]

{¶ 74} In *Turner*, it was important to the court's decision that the off-road hazard was a utility pole, the placement of which required permission by a governmental authority. The court explained: "Placement that complies with the requirements of the public authority that owns the right of way is indicative that the object is not an obstacle to the traveling public." *Id.* at ¶ 20. The court referenced its decision in *Black v. Berea*, 137 Ohio St. 611, 32 N.E.2d 1 (1941), as support for this proposition.

{¶ 75} In *Black*, a passenger in an automobile extended her arm outside the vehicle in which she was riding, striking it against a rural mailbox. She alleged that the "mailbox projected so closely to the edge of the highway that it constituted a nuisance," and the city should have removed or required removal of the mailbox. *Id.* at 611. The court discussed at length the postal regulations pertinent to the *location* of the mailbox. It held that "[w]here a post office patron erects a rural mailbox on a post road in a sparsely settled part of a municipality in substantial compliance with the requirement of the Post Office Department and in about the same proximity to the paved portion of the road as other mailboxes which have been erected and maintained for many years along the same

---

[1] Despite the suggestion to the contrary in the majority decision, the Snays do not argue that the Burrs owed a duty to remove ice from the right-of-way. ("[A]ppellees also owed no duty to Mr. Snay to remove any off-road natural accumulation of black ice.").

34.

road, a municipality has no authority to remove or reset such mailbox." *Id.* at paragraph one of the syllabus.

{¶ **76**} Relying on *Black*, the Ohio Supreme Court announced in *Turner* that—as a matter of law—a utility company has no liability for any damages resulting from the location of its pole if (1) it has obtained any necessary permission to install the pole and (2) the pole does not interfere with the usual and ordinary course of travel. *Turner* at ¶ 21. The Snays argue that this was a very fact-specific ruling.

{¶ **77**} Regarding *Strunk*, that case addressed a municipality's statutory duty under R.C. 723.01 to keep streets and highways open, in repair, and free from nuisance. The Snays argue that it therefore has no application here.

{¶ **78**} Turning to *Manufacturer's*, the Snays point out that the first paragraph of the syllabus announced a rule that is applicable to political subdivisions, while the second paragraph applies to private landowners like the Burrs. The Snays argue that the Burrs' placement of a uniquely-reinforced mailbox within such close proximity to the paved edge of Young Road, a narrow rural highway with a speed limit of 55 m.p.h., was both "inconsistent with a highway purpose" and an "unreasonable hazard to users of the highway" and, therefore, the Burrs may be liable for damages proximately caused by their improper use of the right-of-way. *Manufacturer's* at paragraph two of the syllabus.

{¶ **79**} Finally, the Snays claim that *Ramby* and *Floering* are distinguishable because this case falls within an "exception" to the rule that was recognized in those cases. That is, both *Ramby* and *Floering* recognized that an exception to the "no duty"

35.

rule may arise in the case of actual or constructive knowledge of a hazard. *See Ramby* at *5 ("The only distinction that we can envision would be if the owner of the adjacent property had actual or constructive notice of the nuisance, while the municipality had no such notice."); *Floering* at ¶ 20 ("The trial court's finding in the case before us that the trust did not have actual or constructive knowledge that the tree posed a hazard to the use of the highway is supported by the evidence."). The Ohio Supreme Court in *Turner* did not explicitly adopt this exception, but it also did not reject it.

{¶ 80} In addition, I note a common thread in the *Ramby* and *Floering* cases: the landowners in those cases failed to *remove* the objects at issue; the landowners did not consciously *place* the objects in the right-of-way.

### 3. Ohio Mailbox Cases: *Harkins*, *Sweitzer*, and *Battista*

{¶ 81} Before analyzing the current facts under the applicable law discussed above, there is one final aspect of Ohio precedent that is relevant to the question of duty in this case: similar cases involving collisions with dangerously reinforced mailboxes that were struck by errant motorists. I am aware of three such cases in Ohio, all of which were cited by the majority.

{¶ 82} In *Harkins v. Shelter*, 9th Dist. Summit No. C.A. 12372, 1986 WL 7752 (July 9, 1986), the plaintiff was a passenger in a car that partially left the road and struck a pole that supported four mailboxes. The defendant used one of the boxes and the other two were used by the occupiers of rental properties that he owned. The fourth mailbox was filled with concrete. The defendant was aware of this, but it had been filled before

36.

he bought the property. He allegedly told the investigating officer that the mailbox was filled with concrete because the boxes had previously been vandalized with baseball bats.

{¶ 83} The matter proceeded to trial on theories of absolute nuisance and negligence. The negligence claim went to the jury, which found negligence on the part of both plaintiff (60 percent) and defendant (40 percent). The trial court directed a verdict in favor of defendant on the absolute nuisance claim. The plaintiff moved for judgment notwithstanding the verdict and for a new trial. The trial court denied the motions.

{¶ 84} Plaintiff argued on appeal that the trial court should have allowed the jury to consider her claim that defendant was strictly liable for maintaining a dangerous condition in the public way. The appellate court held that there was no evidence that defendant engaged in an intentional act involving a culpable wrong, created an absolute nuisance, or committed an unlawful act so as to create an absolute nuisance and invoke strict liability.

{¶ 85} In *Sweitzer v. Houtman*, 5th Dist. Delaware No. 98CA-E-11-058, 1999 WL 172891 (Feb. 18, 1999), a driver swerved into defendant's mailbox while trying to avoid a collision with an oncoming truck, causing damage to his vehicle. The mailbox was located one-and-one-half feet from the edge of the pavement and was constructed of material that allowed no breakaway. The defendant admitted that kids had hit his mailbox in the past, and the plaintiff urged that it was "reasonable to infer that [defendant] purposely built a mailbox of more rigid construction in order to withstand the abuse it had taken in the past." *Id.* at *2.

37.

{¶ 86} The plaintiff argued that it was "reasonably foreseeable a person traveling on the roadway could be injured by the mailbox's construction." *Id.* But the trial court concluded that the proximate cause was the plaintiff's action in swerving to avoid the collision with the truck and granted summary judgment in favor of defendant. The appellate court affirmed. It held that the negligence of the truck driver did not transfer to the defendant landowner, thus the record did not demonstrate sufficient evidence that defendant breached a duty owed to plaintiff, causing him damages. A concurring judge disagreed that the record lacked "sufficient evidence of breach of duty to survive summary judgment," but it agreed that the record was "insufficient to establish damages caused by the possible breach of that duty." *Id.* at *3.

{¶ 87} Finally, in *Battista v. Bucceri*, 5th Dist. Stark No. 2014CA00027, 2014-Ohio-4437, the plaintiff's vehicle slid on black ice, left the road, and struck defendants' mailbox. The mailbox was erected 20 years earlier, was four feet wide, 30 inches deep, was surrounded by bricks, and was 18 inches off the paved portion of the roadway. Plaintiff moved for summary judgment, seeking a determination that defendants "owed a duty to the traveling public regarding the construction and placement of their mailbox." *Id.* at ¶ 3. Defendants filed a cross-motion on the issues of duty and proximate cause. The trial court granted defendants' cross-motion, finding that plaintiff's negligence was the proximate cause of the accident and plaintiff was a trespasser on defendants' property.

38.

{¶ 88} In addressing the "duty" element of plaintiff's claim, the appellate court found that "[t]he tremendous trifle to [plaintiff's] position is that the mailbox was not on any part of the travel portion of the roadway and was not the cause of [plaintiff's] loss of control and skidding off the roadway." Despite recognizing that the mailbox was in the right-of-way, the court found that because a "motorist's right of travel does not include the undeveloped right-of-way adjacent to the roadway," plaintiff was a trespasser to whom no duty was owed except to refrain from willful, wanton, or reckless conduct. *Id.* at ¶ 20. It ultimately concluded, however, that "[r]egardless of the determination on duty, it can never be established that the mailbox was the proximate cause of plaintiff's injuries." *Id.* at ¶ 21. Rather, it held, the "probable cause" of the accident was plaintiff's "failure to control her vehicle on the icy roadway." *Id.*

### E. The Burrs' Duty in this Case

{¶ 89} While I recognize that the defendants prevailed in the majority of the cases discussed above, I agree with the Snays that those cases are distinguishable. I would find here that the Burrs owed a duty to the Snays under the particular circumstances of this case for the following reasons.

{¶ 90} First, I agree with the Snays that the holding in *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, was limited to accidents involving utility poles. As stated in its syllabus, the court addressed one specific scenario: "When a vehicle collides with a *utility pole* located off the improved portion of the roadway but within the right-of-way, *a public utility* is not liable, as a matter of law, *if the utility has obtained*

39.

*any necessary permission to install the pole* and the pole does not interfere with the usual and ordinary course of travel. (Emphasis added.) *Id.* at paragraph one of the syllabus. While some of the analysis in *Turner* suggests the potential for a broader application of the no-duty rule, the syllabus and ultimate holding in that case are fact-specific.

{¶ 91} Second, *Turner* specifically provides immunity to utility companies for any injuries resulting from the mere *location* of a properly-authorized utility pole. *Turner* at ¶ 2 (plaintiff alleged that the utility company was negligent by "placing, maintaining and continuing to utilize the utility pole in such close proximity to the traveled portion" of the road)*; see also Black*, 137 Ohio St. at 611, 32 N.E.2d 1 (mailbox alleged to have been a nuisance simply because it "projected so closely to the edge of the highway"). I doubt that *Turner* would have any application if a utility company decided to reinforce its pole in an unusual and unauthorized way, and a plaintiff alleged that the utility's pole's unique and extreme reinforcement—not merely its location—created an unreasonably dangerous hazard to motorists who used the roadway as intended.

{¶ 92} Third, I agree with the Snays that *Strunk* is inapplicable because it addressed a municipality's statutory duty under R.C. 723.01.

{¶ 93} Fourth, *Ramby* and *Floering* contemplate an exception to the general no-duty rule where a landowner has actual or constructive knowledge of a hazard. And here, there is evidence of such knowledge. Matthew constructed the mailbox using an eight-inch pipe, buried it three feet below ground, and secured it with concrete mix even though he knew that the post office recommended using a pipe no more than two inches

40.

wide and burying the pipe no more than two feet deep. Matthew testified that (1) he was aware of the postal service recommendations for constructing mailboxes on rural roads, (2) he understood the purpose of those recommendations, yet (3) he chose to disregard the recommendations in favor of protecting his personal property. He did so despite the fact that his mailbox was in the right-of-way—only one foot, nine inches off the paved roadway—and he was aware of other instances where vehicles veered or slid off Young Road. For these reasons, I would find that the express exception recognized in *Ramby* and *Floering* applies in this case.

{¶ 94} Fifth, I find it important that *Ramby* and *Floering* considered whether there was a duty to *remove* an off-road hazard. The *Ramby* court found that "[n]o precedent exists for imposing a duty on public or private landowners *to remove* an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway." (Emphasis added.) *Ramby* at *3. Here, Matthew affirmatively *created* the hazard by consciously disregarding the postal service recommendations for the construction of mailbox posts. Had the property owners in *Ramby* or *Floering* knowingly erected the stone pillar or planted the tree mere feet from the paved road, the outcome of those cases may have been different.

{¶ 95} Sixth, regarding *Manufacturer's*, a reasonable factfinder could conclude that the uniquely-reinforced mailbox within such close proximity to the paved edge of Young Road was "inconsistent with a highway purpose" and an "unreasonable hazard to

41.

users of the highway" under the specific facts of this case. *Manufacturer's* at paragraph two of the syllabus. Moreover, I agree that the first paragraph of the syllabus is not applicable because it addressed the circumstances "for which a political subdivision may be liable under R.C. 2744.02(B)(3)." *Id.* at paragraph one of the syllabus. But even if the first paragraph of the *Manufacturer's* syllabus applies to private landowners generally, it is not applicable in this case for two reasons. First, it addresses "obstructions *to visibility*," which necessarily requires an analysis of the impact of such visual obstructions upon the "usual and ordinary course of travel." Second, to the extent that this rule has been applied beyond visual obstructions, as discussed, the exception to that rule as articulated in *Ramby* and *Floering* applies.

{¶ 96} Seventh, as for the other Ohio mailbox cases—*Harkins*, *Sweitzer*, and *Battista*—I would find those cases distinguishable too. *Harkins*, 9th Dist. Summit No. C.A. 12372, 1986 WL 7752, involved a preexisting mailbox that was not placed on the property by the defendant. What's more, plaintiff's negligence claim was allowed to go to the jury; the claim on appeal was one for strict liability arising from an absolute nuisance—which is not at issue here. *Sweitzer*, 5th Dist. Delaware No. 98CA-E-11-058, 1999 WL 172891, involved a claim for property damage—not personal injury; it differs from the present case where it is alleged that the severity of Cletus's injuries resulted from the particular construction of the mailbox. And in *Battista*, 5th Dist. Stark No. 2014CA00027, 2014-Ohio-4437, the trial court's no-duty determination was premised primarily on its application of premises liability principles and its conclusion that the

plaintiff was a trespasser on the defendant's property. Given that the Burrs' mailbox was located in the right-of-way, Cletus was not a trespasser on the Burrs' property. *See Lorenz v. Young*, 5th Dist. Tuscarawas No. 2005 AP 06 0046, 2005-Ohio-6190, ¶ 25 (finding question of fact whether appellant was within public right-of-way, and, therefore, not trespassing when he was struck by appellee's vehicle).

{¶ 97} Finally, regarding the majority's reliance on *Black*, 137 Ohio St. at 611, 32 N.E.2d 1, and its discussion of postal regulations relating to the location of mailboxes erected on rural roads—provisions that no longer appear in the Code of Federal Regulations—"the fundamental question" in *Black* was "whether a municipality may be held liable in a tort action on account of suffering a mailbox to be erected and maintained in one of its streets." *Id.* at 612. The court ultimately concluded that a municipality "has no authority to *remove* or *reset* a mailbox" that is erected by a post-office patron and that is not otherwise a nuisance. *Id.* at paragraph one of the syllabus (emphasis added). Here, the Snays have not sued a municipality and, again, Matthew *created* the hazard at issue. Moreover, the Snays do not challenge the location of the Burrs' mailbox; they argue that in constructing the post to which their mailbox was affixed, the Burrs consciously disregarded guidelines designed to protect travelers whose vehicles may unintentionally, but foreseeably, veer off the paved roadway. The proximity of the mailbox to the paved road is simply a factor bearing on the foreseeability of the risk that the mailbox may be struck by an errant car.

43.

**{¶ 98}** In sum, I would find that the Burrs owed a duty to the Snays under the specific circumstances of this case. That is, the Burrs had a duty to install their mailbox in a reasonably-safe manner because a reasonably prudent person would have anticipated that an injury was likely to result from the "particular act" at issue here. *Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23 (if a reasonably prudent person would have anticipated injury was likely to result from a particular act, the court may find that a duty exists). In other words, a reasonably prudent person would have anticipated that the construction of a mailbox using an eight-inch pipe, buried three feet below the ground, and secured with a concrete mix—and placed only one foot, nine inches from the paved edge of Young Road, a 20-foot wide two-lane rural roadway, with a speed limit of 55 m.p.h.—was likely to result in injury, especially where (1) Matthew disregarded postal service recommendations regarding the construction of mailbox posts, which he knew were intended to protect motorists who accidentally veer from the paved road, and (2) Matthew knew of other instances in which vehicles had veered or slid off Young Road.

**{¶ 99}** Under the particular facts of this case, Matthew had actual knowledge of the unreasonably dangerous hazard he built on his property. I would, therefore, conclude that the Burrs owed a duty which reasonable minds could conclude was breached.

### F. Proximate Cause

**{¶ 100}** In addition to arguing that no duty was owed, the Burrs also argue that summary judgment in their favor was appropriate because the construction of their

44.

mailbox did not proximately cause the Snays' injuries. They maintain that it was Cletus's own negligence that caused him to lose control of his vehicle, leave the paved highway, and strike the Burrs' mailbox. They contend that Cletus was negligent per se in failing to keep his vehicle under control and within his lane of travel—violations of R.C. 4511.25 and 4511.202—and they emphasize that poor road conditions do not relieve a motorist of his or her duty to comply with Ohio traffic laws.

{¶ 101} The Snays respond that under established tort law, an injury may have more than one proximate cause. They argue that even if Cletus was negligent per se in failing to control his vehicle and sliding into the mailbox, this does not mean that Cletus's conduct was the proximate cause of his injuries. They insist that there exists a genuine issue of material fact as to whether the Burrs' breach of duty—if not the *sole* proximate cause—was *a* proximate cause of their injuries.

{¶ 102} The Snays offered the affidavit of an expert witness who opined that Cletus would have suffered no injuries had the Burrs' mailbox been constructed of materials that would have allowed it to simply fall away when hit by a vehicle, as contemplated by the guidelines that Matthew reviewed before he built his mailbox. The expert opined that Matthew's use of the "unyielding heavy metal pipe" is what caused the vehicle to roll-over and resulted in Cletus's injuries.

{¶ 103} In order to satisfy the element of proximate cause, a plaintiff must prove that the defendant's negligent conduct is a substantial factor in bringing about the injury. *Skinner v. N. Mkt. Dev. Auth., Inc.*, 10th Dist. Franklin No. 96APE12-1655,

45.

1997 WL 381638, *3 (July 10, 1997). Whether a defendant's conduct is a proximate cause of a plaintiff's injuries is a question of fact for the jury. *Strother v. Hutchinson*, 67 Ohio St.2d 282, 288, 423 N.E.2d 467, 471 (1981).

{¶ 104} "It is a well-established principle of tort law that an injury may have more than one proximate cause." (Internal citations and quotations omitted.) *Williams v. Chrysler First Financial Services Co.*, 2017-Ohio-7778, 97 N.E.3d 1123, ¶ 22 (6th Dist.). "The fact that one person is negligent *per se* does not mean that such negligence was the proximate cause or sole proximate cause of the injury." *Guthrie v. Jamison*, 10th Dist. Franklin No. 94APE10-1560, 1995 WL 238425, *3 (Apr. 20, 1995), citing *Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35, 40, 506 N.E.2d 212 (1987) (recognizing that even where a plaintiff is held to have been negligent per se in operating his or her vehicle, "such holding does not mean that his negligence was the sole proximate cause, or even a proximate cause, of the collision that resulted in his death.").

{¶ 105} The Burrs rely on *Sweitzer*, 5th Dist. Delaware No. 98CA-E-11-058, 1999 WL 172891 and *Battista*, 5th Dist. Stark No. 2014CA00027, 2014-Ohio-4437, in support of their position that Cletus's conduct alone caused the collision here. As I explained in my discussion concerning the existence of a legal duty owed, I would find *Sweitzer* and *Battista* distinguishable.

{¶ 106} In *Sweitzer*, the plaintiff suffered only property damage to his truck when the side mirror of the truck struck the defendant's mailbox. While the plaintiff complained of the danger posed by the defendant's use of rigid materials in constructing

46.

the mailbox, there is no indication that he offered any evidence to demonstrate that his truck would not have been damaged had breakaway materials been used instead of rigid materials. In fact, in *Sweitzer,* Judge Hoffman wrote a concurring opinion, disagreeing with the majority that no duty was breached, but agreeing that the evidence was insufficient to establish that plaintiff's damages were caused by the breach of that duty.

{¶ 107} In *Battista,* the plaintiff offered expert testimony opining that the size and rigidity of defendant's mailbox rendered it non-compliant with the technical requirements and intent of the postal service's guidance and that the mailbox constituted a hazardous roadside condition. But unlike the present case—where evidence was presented indicating that Cletus's truck would *not* have overturned and Cletus would have sustained *no* injuries if the Burrs' mailbox had been constructed of breakaway materials—there is no indication that any such evidence was presented in *Battista.*

{¶ 108} In my view, the majority misinterprets the Snays' arguments regarding proximate cause. That is, the majority decision states:

> Appellees allege that but-for the location and erection of appellees' mailbox on Young Road on the date of his accident, Mr. Snay might not have struck the mailbox, overturned his vehicle in a ditch, or been injured. Such speculation rests on an unsupported inference that appellees' mailbox specifically and proximately caused Mr. Snay's vehicle to veer off Young Road in the first place. There is no evidence of such proximate causation.

47.

{¶ 109} However, the Snays do not claim that the "location and erection" of appellees' mailbox caused Cletus to veer off the road and strike the Burrs' mailbox—they claim that if the mailbox had not been constructed of rigid, unyielding materials, the mailbox would have fallen away when it was struck by Cletus's truck, the truck would not have overturned, and Cletus would not have been injured. Crucial to this point, the Snays offered proper summary-judgment evidence in support of this position—the affidavit of an expert witness. The majority trivializes the evidentiary value of this expert affidavit through the use of quotation marks ("Appellants merely offer as 'evidence' speculations that Mr. Snay's injuries must have been because appellees' mailbox post was 'non-conforming' to postal guidelines."), and overlooks the Snays' argument that Cletus was injured because the Burrs' mailbox was dangerously reinforced— not because his truck slid off the road. In my view, the expert affidavit created a question of fact for the jury on this issue.

{¶ 110} Thus, construing the evidence most favorably toward the Snays, as we are required to do in evaluating a motion for summary judgment, I would hold that reasonable minds could differ as to whether the Burrs' construction of their mailbox— using an eight-inch pipe buried three-feet deep—was a proximate cause of the Snays' injuries.

48.

## G. Conclusion

{¶ 111} For all these reasons, I respectfully dissent from the majority decision. I would find the Snays' assignment of error well-taken, reverse the August 16, 2019 judgment of the Huron County Court of Common Pleas, and remand this matter for further proceedings.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.